UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIESER FELIX, JR.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>D. SATERFIELD,<br><br>　　　　　Defendant. | Case No. 1:25-cv-01084-CDB (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR PLAINTIFF'S FAILURE (1) TO STATE A CLAIM AND (2) TO PROSECUTE AND TO OBEY COURT ORDERS AND LOCAL RULES<br><br>(Docs. 1, 7)<br><br>**14-DAY OBJECTION PERIOD**<br><br>Clerk of the Court to Assign District Judge |

Plaintiff Elieser Felix, Jr. ("Plaintiff") is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983.

I. **Relevant Background**

Plaintiff initiated this action with the filing of a complaint on August 27, 2025. (Doc. 1). On September 18, 2025, the Court entered the first screening order on Plaintiff's complaint. (Doc. 7). Because the Court found the complaint fails to state any cognizable claims against Defendants D. Saterfield and the unknown correctional officer Defendant, and that Plaintiff may be able to cure the deficiencies in his pleading, the Court granted Plaintiff leave to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith. *Id.* at 11. With its screening order, the Court served on Plaintiff a civil rights complaint form and ordered him within

21 days from service of the order and form (*i.e.*, October 10, 2025) to either file a first amended complaint curing the deficiencies identified by the Court in the order or in the alternative, file a notice of voluntary dismissal if Plaintiff no longer wishes to pursue this action. *Id.* Plaintiff was forewarned that the failure to comply with the order will result in the "**recommend[ation] that this action be dismissed, without prejudice, for failure to obey a court order and for failure to prosecute.**" *Id.* (emphasis original). The time to comply with the order has passed and Plaintiff failed to file either a first amended complaint or a notice of voluntary dismissal. Accordingly, the undersigned issues the following findings and recommendations to dismiss this action for Plaintiff's failure to state a claim, and, separately, for failure to prosecute and to obey court orders and Local Rules as set forth below.

**II.     Failure to State a Claim**

   **A.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b). The Court must dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

   **B.     Pleading Requirements**

      1.     Federal Rule of Civil Procedure 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Id.* at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Plausibility does not require probability, but it requires more than the "sheer possibility" of a defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 556). A claim is plausible when the facts pleaded allow the court to make reasonable inferences that the defendant is liable for wrongful conduct. *Id.* However, a court "is not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted). The mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

    2.    <u>Linkage and Causation</u>

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that a government actor may be liable under section 1983, if he performs an affirmative act, participates in another's affirmative acts, or fails to perform an act which he is legally required to do that causes the prisoner to suffer a deprivation of rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir.

1976)). In addition to direct participation, a government actor may be liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 588 F.2d at 743).

### 3.  Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676–77; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability may be based on inaction in the training and supervision of subordinates. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey*, 673 F.2d at 268.

**C.   Discussion**

### 1.   Plaintiff's Allegations[1]

Plaintiff's complaint names as Defendants D. Saterfield, correctional officer at Sierra Conservation Center ("SCC"), and one unknown SCC officer. (Doc. 1 at 2). Plaintiff asserts a claim for relief under the Eighth and Fourteenth Amendments for threat to safety. *Id.* at 3. Plaintiff alleges that between 2023 and 2025, while he was in the custody of SCC, a correctional facility under the California Department of Corrections and Rehabilitation ("CDCR"), he was assaulted and injured by another inmate. *Id.* He alleges that Defendants Saterfield and other officers forced inmate Hawkyard, who is mentally ill, to be celled with Plaintiff. *Id.* Inmate Hawkyard attacked and bit Plaintiff's finger, requiring medical attention. *Id.* Defendants thereafter charged Plaintiff

---

[1] The undersigned accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

and placed him in Ad-Seg with disciplinary actions without a hearing before the disciplinary actions were later reversed. *Id.* Plaintiff alleges Defendants are employed at the prison and are personally involved in the event relevant to the suit and "are under color of law." *Id.* Plaintiff alleges he sought the assistance of inmates within his custody to present claims because he is mentally impaired, and due to this impairment, he seeks the Court's assistance for appointment of counsel.

Plaintiff alleges injuries that required medical attention due to his finger being bit and from being assaulted by another inmate. *Id.* Plaintiff indicates his claim has been administratively exhausted. *Id.* In his prayer for relief, Plaintiff seeks the Court grant a declaration that describes the violation of his constitutional rights, compensatory and punitive damages against each defendant, a jury trial, and any additional relief the Court deems just, proper, and equitable. *Id.* at 6. The complaint is signed and dated August 22, 2025, and Plaintiff indicates "various inmate paralegals" assisted him in the preparation of the complaint. *Id.*

        2.      <u>Analysis</u>

                a.      *Eighth Amendment Failure to Protect*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend VIII. While the nature of imprisonment restricts significant rights, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (citations omitted). The Eighth Amendment protects prisoners from inhumane methods of punishment and conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "After incarceration, only the 'unnecessary and wanton infliction of pain' … constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Write*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). No matter where prisoners are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).

The Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners because "being violently assaulted in prison is simply not part of the

penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833–34 (1970); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). A prisoner seeking relief for an Eighth Amendment violation must show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate. *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013).

To prevail on a failure-to-protect claim under the Eighth Amendment, a prisoner must show that a prison official's act or omission (1) was objectively, "sufficiently serious," and (2) the official was subjectively, deliberately indifferent to an inmate's health or safety. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A deprivation is sufficiently serious if the conditions of confinement pose a "substantial risk of serious harm," *id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)), and a prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The second prong of the *Farmer* test is subjective and requires the prison official to have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 302–04). "Deliberate indifference" entails something more than negligence but less than acts or omissions intended to cause harm or with knowledge that harm will result. *Id.* at 835 (following *Estelle*, 429 U.S. at 104). To prove deliberate indifference, a plaintiff must show that the official knew of and disregarded an excessive risk to inmate safety. *Id.* at 837. A prison official need not "believe to a moral certainty" that a prisoner is at risk of harm "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted). The obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Even if a prison official should have been aware of the risk but was not, there is no Eighth Amendment violation, no matter how severe the risk. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. In addition, "prison

officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably." *Id.* at 844. "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health." *Williams v. Wood*, 223 Fed. Appx. 670, 671 (9th Cir. 2007) (citation omitted).

Here, the complaint fails to state a claim for failure to protect under the Eighth Amendment against Defendants. First, Plaintiff's allegations—that, as a mentally ill inmate, he was forced to be celled with Hawkyard, another inmate with mental illness—do not meet the first prong that such placement was objectively, sufficiently serious under *Farmer*. *Farmer*, 511 U.S. at 834. While the Court acknowledges that mentally ill inmates may present a danger to other inmates, the same may also be true for non-mentally ill inmates. *See Fosselman v. Dimmer*, No. 1:12-cv-01302-DAD-SAB (PC), 2017 WL 1254685, at *18 (E.D. Cal. Feb. 17, 2017) ("While there is certainly a possibility that two inmates might at some point be involved in an altercation, the mere possibility of such does not rise to the level of a substantial risk of serious harm sufficient to violate the Constitution."); *Gibson v. Chua*, No. 1:15-cv-00485-SKO (PC), 2015 WL 9489703, at *2 (E.D. Cal. Dec. 30, 2015) ("Plaintiff's premise that mentally ill inmates somehow present an unacceptable risk of harm to non-mentally ill inmates due to their violent tendencies while not presenting a risk to other mentally ill inmates is illogical."); *accord, Morales v. City of N. Las Vegas*, 272 F. Supp. 3d 1216, 1222–23 (D. Nev. 2017) ("[D]ouble-celling an inmate with mental health issues, without more, is not constitutionally impermissible."); *Jackson v. McMahon*, No. CV 17-7296-AG (JPR), 2018 WL 6016981, at *18 (C.D. Cal. May 29, 2018) (finding failure to protect claim insufficient at screening where plaintiff "nowhere alleges that his cellmate or any other inmate threatened to or did attack him *because of his mental health* or for any reason.") (emphasis added). Plaintiff must allege more than merely being celled with another mentally ill inmate posed a substantial risk of harm; instead, he must state factual allegations that characterize *why* the conditions or circumstances of that placement were objectively and sufficiently serious. *See, e.g., Tapia v. Diaz*, No. 1:20-cv-01790-NONE-EPG (PC), 2021 WL 916248, at *4-5 (finding Plaintiff's failure to protect claim viable at screening where plaintiff "has alleged that his manic and suicidal inmate

7

1   was attacking his cellmates.  Defendant [] knew this, yet failed to protect [p]laintiff, and even
2   returned the inmate to [p]laintiff's cell a few hours after removing him.").

3   Additionally, Plaintiff has not pled allegations to satisfy the second prong under *Farmer* –
4   that Defendants knew of and disregarded the excessive risk of celling inmate Hawkyard with
5   Plaintiff such that Defendants were subjectively and deliberately indifferent to his health or safety.
6   *See Berg*, 794 F.2d at 459 ("[The prison official] must have more than a mere suspicion that an
7   attack will occur."); *Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from
8   which the inference could be drawn that a substantial risk of serious harm exits, and [the official]
9   must also draw the inference.").

10  Because Plaintiff was provided the opportunity to amend his claims to remedy these
11  deficiencies against Defendants, and Plaintiff has failed to file an amended complaint correcting
12  the noted deficiencies, the undersigned assesses that leave to amend would be futile. *See Hartman*
13  *v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013).

                               b.      *Fourteenth Amendment Due Process*

15  The Fourteenth Amendment protects persons from deprivations of life, liberty, or property
16  without due process of law.  U.S. Const. amend. XIV.  To state a due process claim, the plaintiff
17  must first "establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221
18  (2005) (citations omitted).  "The Due Process Clause standing alone confers no liberty interest in
19  freedom from state action taken 'within the sentence imposed,'" including housing or classification
20  decisions.  *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460,
21  480 (1983)).

22  Protected liberty interests may arise from the Constitution or from state law.  *Wilkinson*,
23  545 U.S. at 221. "A state may create a liberty interest through statutes, prison regulations, and
24  policies." *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (citation omitted).  When
25  a protected liberty interest is implicated, the Due Process Clause provides certain procedural
26  guarantees.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  The amount of
27  process or specific procedures required vary by context and the particular interest at stake.  *See*
28  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

"[T]he Due Process Clause [does not] . . . protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Thus, prisoners lack a liberty interest in being housed in a particular facility or unit, unless the state created a protected right "by placing substantive limitations on official discretion." *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). Moreover, the Due Process Clause does not give prison inmates a liberty interest to remain within the general prison population. *McFarland v. Cassady*, 779 F.2d 1426, 1427-28 (9th Cir.1986).

To establish a liberty interest in remaining free from administrative segregation, a prisoner must show that his placement in segregation resulted in an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (applying the "atypical and significant hardship" test contemplated in *Sandin*). Placement in segregation for administrative purposes "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and thus, generally does not violate a liberty interest protected by the Due Process Clause. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by *Sandin*, 515 U.S. 472.

Where a substantive due process right is triggered by placement in administrative segregation, certain procedural safeguards must be met. Prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversarial review of the evidence justifying the placement. *See Hewitt*, 459 U.S. at 476. The prisoner must be provided notice of any charges against him and an opportunity to respond. *See id*. at 477.

Here, Plaintiff has not alleged sufficient facts to indicate that his placement in "Ag-Seg" (*i.e.*, administrative segregation) was atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484; *see Medina v. Morris*, 676 Fed. Appx. 702, 703 (9th Cir. 2017) (dismissal of due process claim based on administrative segregation placement was proper where plaintiff failed to allege facts sufficient to show a due process violation); *Everett v. Black*, 738 Fed. Appx. 537, 538 (9th Cir. 2018) (same). And "[t]ypically, administrative

segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Unlike the plaintiff in *Serrano*, Plaintiff has not alleged facts asserting that, due to "a novel situation" or unusual personal characteristics, his placement in administrative segregation presented an atypical and significant hardship compared to the level of hardship routinely faced by other inmates in the same setting. Rather, Plaintiff's complaint simply alleges that he was charged and placed in administrative segregation "with disciplinary actions without a hearing" and that those "disciplinary actions were reversed." (Doc. 1 at 3).

Additionally, Plaintiff fails to state a claim upon which relief can be granted. The undersigned acknowledges Plaintiff's complaint alleges he was placed in administrative segregation without a hearing (*i.e.*, notice of any charges against him). *See Hewitt*, 459 U.S. at 476 (an informal, nonadversary hearing is sufficient "both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him."); *Ireland v. Solano Cnty.*, No. 2:19-cv-1104-EFB P, 2019 WL 4955140, at *2 (E.D. Cal. Oct. 8, 2019) ("Due process requires, *inter alia*, an informal, non-adversarial hearing regarding a prisoner's placement in administrative segregation.") (citation omitted). However, there are no facts to indicate whether Plaintiff was provided the opportunity to respond. The fact that Plaintiff's disciplinary actions were ultimately dismissed shows prison officials did not fail to conduct an informal, non-adversarial review of the evidence justifying Plaintiff's ag-seg placement within a reasonable time. Thus, it appears Plaintiff received all the due process protections he was due. Therefore, he fails to state a cognizable due process claim.

As noted above, Plaintiff was afforded an opportunity to amend his to the extent he can in good faith remedy these deficiencies against Defendants. Because he has failed to file an amended complaint, the undersigned finds that leave to amend this claim would be futile. *See Hartman*, 707 F.3d at 1129-30.

        *c.*  *Declaratory and Injunctive Relief*

The complaint seeks declaratory relief, specifically a declaration that the harm alleged therein resulted in the violation of his constitutional rights. (Doc. 1 at 6). "It is always the duty

of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief." *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426, 431 (1948). "Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id*. Like other forms of equitable relief, the Court has judicial discretion to grant declaratory judgment, exercised in the public interest. *Johnson v. Torres*, No. 1:22-cv-01457-BAM (PC), 2023 WL 1823605, at *4 (E.D. Cal. Feb. 8, 2023) (citing *Eccles*, 333 U.S. at 431), *F.&R. adopted*, 2022 WL 782342 (E.D. Cal. Mar. 15, 2022). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

Here, the complaint's request for declaratory relief does not warrant the Court's exercise of its equitable authority. *See Washington*, 758 F.2d at 1357. Indeed, should this case proceed to trial and a verdict is returned in Plaintiff's favor, Plaintiff will be entitled to damages, and that verdict will be a finding that Plaintiff's constitutional rights were violated. *Johnson*, 2023 WL 1823605, at *4; *Eccles*, 333 U.S. at 431. Because such relief is unnecessary in this case, at screening, Plaintiff's prayer for unspecified declaratory and injunctive relief is not considered.

**III.    Failure to Prosecute and to Obey Court Orders and Local Rules**

Apart from Plaintiff's failure to state a claim upon which relief may be granted, Plaintiff has failed to comply with this Court's order to file in response to the Court's screening order either an amended complaint or a notice of voluntary dismissal and, as such, has failed to prosecute this action. Accordingly, the undersigned will recommend Plaintiff's complaint be dismissed on this separate, independent ground.

    **A.    Failure to Comply/Failure to Prosecute – Governing Legal Standard**

Local Rule 110, corresponding with Federal Rule of Civil Procedure 11, provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." E.D. Cal. Local Rule 110. The Court has the inherent power to control its docket and

may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action. *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000). A court may dismiss an action based on a party's failure to prosecute an action, obey a court order, or comply with local rules. *See, e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with a court order to amend a complaint); *Malone v. U.S. Postal Service*, 833 F.2d 128, 130-31 (9th Cir. 1987) (dismissal for failure to comply with a court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Carey v. King*, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (internal quotation marks & citation omitted). These factors guide a court in deciding what to do and are not conditions that must be met in order for a court to take action. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

**B.     Analysis**

Here, Plaintiff has failed to comply with the Court's order. Plaintiff has filed no response to the Court's order granting him leave to amend his complaint and the time to do so has passed. There are no other reasonable alternatives available to address Plaintiff's failure to respond and otherwise obey this Court's orders. Thus, the first and second factors—the expeditious resolution of litigation and the Court's need to manage its docket—weigh in favor of dismissal. *Carey*, 856 F.2d at 1440.

The third factor, risk of prejudice to Defendant, also weighs fairly in favor of dismissal since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *See Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). This matter cannot proceed further without Plaintiff's participation to prosecute the case and file an amended complaint curing the deficiencies identified in the screening order or file a notice of voluntary dismissal pursuant to

Federal Rule of Civil Procedure 41(a)(1)(A)(i) if he no longer wishes to pursue this action. The presumption of injury holds given Plaintiff's unreasonable delay in prosecuting this action. Thus, the third factor—a risk of prejudice to the Defendant—also weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re PPA*, 460 F.3d at 1228. Plaintiff has not moved this case forward toward disposition on the merits. He has instead failed to comply with this Court's orders and, thus, is impeding the progress of this action. Therefore, the fourth factor — the public policy favoring disposition of cases on their merits — also weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262. Here, the Court's order granting Plaintiff leave to amend and requiring a response from Plaintiff cautioned: "**If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed, without prejudice, for failure to obey a court order and for failure to prosecute**." (Doc. 7 at 12) (emphasis original). Plaintiff was adequately forewarned that the failure to timely file an amended complaint would result in terminating sanctions.

*Remainder of This Page Intentionally Left Blank*

**IV.     Conclusion, Order, and Recommendation**

Accordingly, the Clerk of the Court is **DIRECTED** to randomly assign a District Judge to this action.

And it is **RECOMMENDED** that:

1. The Court DISMISS this action for Plaintiff's failure to state a claim upon which relief may be granted, and separately, for his failure prosecute this action and to comply with the Court's orders. *See* E.D. Cal. Local Rule 110; and

2. The Clerk of the Court be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **October 20, 2025**                              _____
                                                                             UNITED STATES MAGISTRATE JUDGE